IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NICOLE LEE, | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 2:21-cv-11855 |
| vs. | ) |
| MARTIN TRANSPORTATION SYSTEMS, INC., | ) HON. |
| DEFENDANT. | ) |
| | |
| Carla D. Aikens (P69530) | ) |
| Michael L. Jones (P85223) | ) |
| CARLA D. AIKENS, P.L.C. | ) |
| *Attorneys for Plaintiffs* | ) |
| 615 Griswold St., Ste. 709 | ) |
| Detroit, MI 48226 | ) |
| Tel: (844) 835-2993 | ) |
| Fax: (877) 454-1680 | ) |
| carla@aikenslawfirm.com | ) |
| michael@aikenslawfirm.com | ) |

## COMPLAINT

Plaintiff Nicole Lee, by and through her attorneys, Carla D. Aikens, P.L.C, submit the following Complaint against Defendant Martin Transportation System, Inc.

## JURY DEMAND

COMES NOW Plaintiff Nicole Lee and hereby demands trial by jury.

## JURISDICTION

1. At all relevant times to this complaint, Plaintiff Nicole Lee was a resident of Wayne County in the State of Michigan.

2. Defendant Martin Transportation Systems, Inc. is domestic profit corporation that maintains central dispatch functions at its headquarters, 7300 Clyde Park Avenue SW, Byron Center, Michigan 49315, which is located just south of Grand Rapids, Michigan. Attorney Robert C. Shaver, Rhoades McKee PC, is the registered agent at 55 Campau Avenue NW, Suite 300, Grand Rapids Michigan 49503.

3. This action is brought in this Court on the basis of federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**VENUE**

5. Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

**STATEMENT OF FACTS**

6. Martin Transportation Systems, Inc. ("MTS") was at all relevant times run by owner Ric Johnston.

7. MTS employed over 1,200 drivers, owner-operators, and support staff.

8. MTS had 23 terminals throughout the United States and Ontario Canada.

9. MTS' fleet was a mix of company equipment and owner-operators.

10. The satellite terminal locations supported the central dispatch location. The typical terminal included a Terminal Manager/Terminal Representative who was primarily responsible for the overall operation of the site, which included driver related activities, paperwork processing and coordination with maintenance.

11. MTS operated 700 trucks and 1,700 trailers in the Midwest, Northeast, and Southeast.

12. On or about March 29, 2018, MTS hired Ms. Lee.

13. She worked out of Defendant's Byron Center, Michigan terminal.

14. When she was initially hired, she was asked what route she wanted to run, and was given the route from Detroit, Michigan to Toledo, Ohio.

15. At some point, she was told that she could no longer do the Toledo-Detroit run and had to go from Grand Rapids, Michigan to Indianapolis, Indiana.

16. MTS paid her $192.50 per trip and offered health, dental, vision insurance to Ms. Lee.

17. Holidays were paid based on length of service to the company: no paid holidays after first year of service; two paid holidays (Thanksgiving and Christmas) after a year of service; four paid holidays (add New Years and July 4th) after two years of service; six paid holidays after three years of service; and eight paid holidays after four years of service.

18. MTS offered Ms. Lee a 401k plan and matched the employee contribution 25%.

19. Ms. Lee was 100% vested in the 401k plant upon entry. In return, MTS expected timely pick up and freight delivery.

20. During Ms. Lee's employment with MTS, she noticed several discriminatory acts based on race. For example, upon information and belief, MTS only terminated African-American/Black drivers after a yard closing.

21. In addition, African-American/Black employees were not allowed to use certain portable restrooms at the front of the facility. On one such occasion, an African-American/Black employee inquired whether the restroom was "Whites Only" and he was terminated.

22. After MTS lost a contract with General Motors, MTS began disproportionately firing African-American/Black employees for trivial reasons.

23. As further evidence of discrimination and allowing a hostile work environment, MTS allowed Plaintiff's co-worker, "Vicki," a white female, to harass African-American/Black people. Vicki often harassed two African-American/Black male employees, and would report them to management.

24. Vicki harassed and bullied Ms. Lee.

25. After fielding multiple complaints about her conduct, Vicki's union was called, but MTS never fired Vicki for her harassment of African-American/Black workers.

26. During Ms. Lee's employment, Vicki was in two separate accidents in which she hit trailers and ran into a pole. Despite this, Vicki was not fired for being in an accident.

27. Defendant also paid male and Caucasian drivers more than the few African-American/Black female drivers who worked there, for the same routes.

28. As an example of this, a male, Caucasian driver was offered and/or paid $37 more than Ms. Lee for performing the exact same work.

29. Moreover, this same Caucasian male driver got into an accident and was not terminated.

30. Ms. Lee was also subject to harassment from others and nothing was done by Defendant.

31. During Ms. Lee's employment, a man of Arab-descent harassed and assaulted Ms Lee, and proceeded to steal Ms. Lee's truckload. MTS did nothing to prevent this conduct, despite being aware of what occurred.

32. As another example of the hostile work environment, a Caucasian male driver jumped in front of Ms. Lee and took her load.

33. Ms. Lee verbally complained to dispatch about what happened, to which the response was that the should stop yelling..

34. Not only was this man not disciplined for taking Ms. Lee's load, but approximately a week later, MTS changed its policy regarding the order of obtaining load which benefited the male who had taken her load and penalized Ms. Lee.

35. While employed with Defendant, Defendant's Caucasian male drivers routinely cursed or became belligerent with management or dispatch and never faced any consequences.

36. Defendant further discriminated against Ms. Lee because she had a child.

37. MTS knew that Ms. Lee needed to pick her daughter up from school during the school year.

38. However, Ms. Lee was given routes that would require her to sit in a yard for three hours, and because she could not wait because she had to pick up her daughter, MTS would send her home. This caused Ms. Lee to lose hours and income.

39. Ms. Lee informed Defendant's agents that she had been handling the Detroit-Toledo route and that she wanted to return to that route.

40. Defendant informed her that she could not change her route.

41. However, when Caucasian male drivers were hired after her, they were allowed to have the Detroit-Toledo route that Plaintiff requested.

42. Upon information and belief, MTS gave Caucasian males their choice of routes.

43. Further, Defendant hired very female drivers, usually only employing one at any given time.

44. On or about November 11, 2019, a major snow storm hit Southeast Michigan causing accidents, slide off, and dangerous driving conditions. Numerous accidents happened within MTS.

45. On this day, Plaintiff drove slowly and carefully, and she parked her truck for the day at Defendant's yard.

46. As she prepared to exit the truck, she noticed the truck beginning to slide down an embankment toward an electric fence.

47. The fence had a sign on it warning of high voltage, and Ms. Lee feared that she would be electrocuted.

48. She then applied the manual brake so that the truck would stop sliding. With the truck secure, she then left MTS property to pick her daughter up from school.

49. A few days later, on or about November 13, 2019, Ms. Lee was informed that a Caucasian male driver alleged that Ms. Lee was involved in an accident.

50. This allegation was untrue, and MTS had reason to know this based upon the fact that Ms. Lee left the truck on Defendant's property where there are surveillance cameras in the location where the truck was left.

51. However, MTS, without investigating, believed the Caucasian employee and fired Ms. Lee.

52. After terminating her employment, MTS sent Ms. Lee a bill for $1,300 for health insurance coverage.

53. Thereafter, MTS told unemployment that Ms. Lee did not qualify for benefits. Ms. Lee was deprived of unemployment benefits until February 2020, while trying to raise her daughter on her own. This caused Ms. Lee anxiety, worry, and depression.

54. Following this, Ms. Lee requested her employment personnel file from MTS.

55. She sent two handwritten letters to MTS requesting her file; however, MTS never responded.

56. On or about November 16, 2020, Ms. Lee filed a charge of discrimination with the Ohio Civil Rights Commission, which transferred the matter to the Detroit office of the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race and gender.

57. On or about May 12, 2021, the EEOC issued Ms. Lee a Notice of Right To Sue.

**COUNT I**
**HARASSMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")**

58. Plaintiff Nicole Lee incorporates by reference all allegations in the preceding paragraphs.

59. At all material times, Defendant Martin Transportation Systems, Inc. was an employer within the meaning of Title VII, as amended.

60. At all material times, Plaintiff Nicole Lee was an employee within the meaning of Title VII, as amended.

61. At all material times, Plaintiff Nicole Lee identified as an African-American/Black woman. As a result, Ms. Lee is a member of a protected class pursuant to Title VII.

62. Title VII of the Civil Rights Act of 1964 makes it unlawful to harass or discriminate against an employee on the basis of that employee's race.

63. Defendant Martin Transportation Systems, Inc.'s conduct, as alleged herein, violated Title VII. Defendant's firing practices had a discriminatory impact upon African-American/Black employees.

64. Plaintiff Lee alleges Martin Transportation System, Inc. fired African-American/Black employees at a disproportionately higher rate than other races.

65. Defendant Martin Transportation Systems, Inc. treated Ms. Lee's Caucasian contemporary employees better than her.

66. Namely, Defendant did not fire similarly situated Caucasian employees for the same alleged reason it fired Ms. Lee.

67. Defendant Martin Transportation System, Inc. paid Caucasian employees a better wage than Plaintiff Lee.

68. Plaintiff Nicole Lee was subjected to offensive communication, bullying and/or other conduct on the basis of her race.

69. A respondeat superior relationship existed because Plaintiff Lee's Terminal Manager/Representative was primarily responsible for the overall operation of the site. The satellite terminal locations supported the central dispatch location.

70. Defendant and its agents' unlawful actions were intentional, willful, malicious and done with reckless disregard for Plaintiff's rights.

71. Plaintiff Lee notified Defendant MTS, through its agents, of the unwelcomed conduct and communication. Defendant MTS failed to remedy the unwelcomed conduct or communication. In fact, Defendant MTS blamed Plaintiff Lee.

72. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with Plaintiff's employment. It created an intimidating, hostile, and/or offensive work environment. As alleged in the statement of facts, Plaintiff Lee was bullied, assaulted, and harassed at work because of her race.

73. As a proximate cause of Defendant's discriminatory actions, Plaintiff Lee suffered past wage loss, future wage loss and earning capacity.

74. As a proximate cause of Defendant's discriminatory actions, Plaintiff Lee's physical health suffered.

75. As a proximate cause of Defendant's discriminatory actions, Plaintiff Lee suffered humiliation, anxiety, mental anguish, and emotional distress.

76. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

77. Plaintiff Lee requests the relief as described in the Prayer for Relief below.

## COUNT II
## HARASSMENT & DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

42. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

43. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of the ELCRA.

44. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to harass or discriminate against an employee because of their race or skin color.

45. A respondeat superior relationship existed because Plaintiffs' supervisors had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct all of the Plaintiffs daily work activity, as alleged in the statement of facts.

46. Plaintiff is within a protected racial class pursuant to Title VII.

47. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

48. The communication and conduct was unwelcomed.

49. This unwelcomed conduct and communication was intended to or in fact did substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

50. Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

51. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

52. Plaintiff requests relief as described in the Prayer for Relief below.

### COUNT III
### HARASSMENT & DISCRIMINATION ON THE BASIS OF SEX/GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

53. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

54. At all material times, Plaintiff was Defendant's employee.

55. Defendant was an employer covered by, and within the meaning of, the ELCRA (MCL 37.2101 et seq.)

56. Plaintiff Lee identifies as a woman. Defendant was aware of the same. As such, Plaintiff was a member of a protected class.

57. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct all of the Plaintiffs daily work activity, as alleged in the statement of facts.

58. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee because of their sex or gender.

59. Plaintiff was subjected to communication and conduct on the basis of her status as a member of this protected class including but not limited to being constantly undermined, bullied, assaulted, and criticized unlike her male counterparts.

60. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

61. Plaintiff notified Defendant and its agents of unwelcomed conduct and communication; however, Defendant failed to remedy the same.

62. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

63. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

64. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## DISCRIMINATION/HARASSMENT ON THE BASIS OF SEX/GENDER IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN RIGHTS ACT MCL 37.2102 et seq.

65. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

66. At all material times, Plaintiff was Defendant's employee.

67. Defendant was an employer covered by, and within the meaning of, the ELCRA (MCL 37.2101 et seq.)

68. Plaintiff Lee identifies as a woman. Defendant was aware of the same. As such, Plaintiff was a member of a protected class.

69. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct all of the Plaintiffs daily work activity, as alleged in the statement of facts.

11

70. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee because of their sex or gender.

71. Plaintiff was subjected to communication and conduct on the basis of her status as a member of this protected class including but not limited to being constantly undermined, bullied, assaulted, and criticized unlike her male counterparts.

72. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

73. Plaintiff notified Defendant and its agents of unwelcomed conduct and communication; however, Defendant failed to remedy the same.

74. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

75. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

76. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## SEX-BASED PAY DISCRIMINATION IN VIOLATION OF EQUAL PAY ACT, 29 U.S.C. § 206(D)(1)

77. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

78. Plaintiff, a female, also here alleges that Defendant's policies, practices, decisions and actions were intentionally and/or negligently established to deny, and did deny, her equal compensation, commission, bonus and/or fringe benefits based on her status sex and/or gender.

79. Section 206(d)(1) of the Equal Pay Act makes it unlawful for an employer "to

discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

80. Defendant employed Plaintiff and a male employee in the same driver position requiring substantially and/or comparably equal skill, effort, and responsibility, but paid Plaintiff less money, benefits and/or compensation for the same or similar work.

81. Plaintiff's and Defendant's male employees performed their jobs under similar working conditions, except that she was not given preferential treatment in routes and loads as other males.

82. Plaintiff was paid a lower wage, benefits and/or compensation than Defendant's male driver employees doing substantially equivalent and/or comparable equal work.

83. The differential in pay and/or compensation and/or benefits between female and male drivers was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than gender and/or sex.

84. Defendant caused, contributed to and/or caused the continuation of wage, pay and/or compensation discrimination based on gender and/or sex, in violation of the Equal Pay Act.

85. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendant's actions, and conspiratorial efforts in these same regards, Plaintiff has suffered and/or

continues to suffer emotional distress, resulting in damages in an amount to be proven at trial; and for which Kristy further seeks compensatory, exemplary and/or punitive damages and monetary relief; and, any and all other remedial and/or equitable relief; including, but not limited to, among others, injunctive, declaratory, available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §216(b).

86. Plaintiff seeks damages, punitive damages, liquated damages, and attorney fees and costs as remedies for Defendants' violation of her federally protected rights; especially, those enumerated in 29 USCA §215 including all those remedies available to Kristy under 29 USCA §216(b).

### COUNT VI
### Sex/Gender-Based Discrimination in Wages in Violation of Michigan Elliott-Larsen Civil Rights Act In Employment: MCLA § 37.2202

87. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

88. Michigan's equal pay laws makes it unlawful for an "employer to discriminate in any way in the rate or method of payment of wages to any employee because of his or her sex."

89. Defendant employed Plaintiff and male employees as truck drivers, requiring substantially equal skill, effort, and responsibility.

90. Plaintiff and Defendant's male employees performed their jobs under similar working conditions

91. Plaintiff was intentionally paid a lower wage compensation and/or benefits than the male employees doing substantially equal work.

92. The differential in pay between male employees and Plaintiff was not based on a reasonable factor or factors other than gender and/or sex.

93. Defendant caused, contributed to, or caused the continuation of gender and/or wage discrimination based on sex, in violation of Michigan state law.

94. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial; and as a result of Defendant's actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial.

95. Plaintiff further seeks punitive damages and all other injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to MCLA 37.201, et seq.

## COUNT VII
**RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN RIGHTS ACT MCL 37.2102 et seq.**

96. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

97. At all material times, Defendant was an employer covered by, and within the meaning of, the ELCRA.

98. At all material times, Plaintiff was an employee covered by, and within the meaning of, the ELCRA.

99. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

100. A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

101. Plaintiff engaged in protected activity when she took the following actions

15

including but not limited to reporting conduct of co-workers and opposing harassment by other Caucasian and male drivers.

102. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior because she was engaging in this protected activity with her superiors.

103. After Plaintiff engaged in protected activity, Defendant's agents thereafter harassed Plaintiff and took several adverse employment actions against Plaintiff, culminating in her termination.

104. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

105. Plaintiff notified Defendant and its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

106. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

107. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

108. Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

Plaintiff Nicole Lee requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5.  An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  August 10, 2021	Respectfully Submitted,

/s/ Carla D. Aikens_____
Carla D. Aikens (P69530)
Michael L. Jones (P85223)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com